**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| PETER MIRABELLA,<br><br>        Plaintiff,<br><br>v.<br><br>DIVERSIFIED GLOBAL GRAPHICS<br>GROUP, et al.,<br><br>        Defendants. | Civil Action No. 17-2030 (MAS) (TJB)<br><br>**MEMORANDUM OPINION** |

### SHIPP, District Judge

      This matter comes before the Court upon a Motion to Dismiss filed by Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and United Steel Workers, Local 318 (collectively, the "Union") (ECF No. 14) and a Motion to Dismiss filed by Defendant DG3 North America, Inc. (improperly pled as Diversified Global Graphics Group) ("DG3") (ECF No. 16) (the Union and DG3 are, collectively, "Defendants"). Plaintiff Peter Mirabella ("Plaintiff") filed opposition (ECF No. 19), and Defendants replied (ECF Nos. 22, 23). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' Motions are GRANTED.

I.   **Background**[1]

   A.   **Plaintiff's Allegations**

Plaintiff filed the instant two-count action on February 3, 2017. (Compl., ECF No. 1-1.) On March 11, 1996, Plaintiff entered into an employment agreement with DG3, which provided that Plaintiff would be entitled to severance pay if his employment was terminated. (*Id.* ¶¶ 1-3.) In September 2011, Plaintiff's employment status was changed from "full-time" to "on-call." (*Id.* ¶ 5.) Due to his "on-call" status, Plaintiff would be contacted by telephone "when a shift needed to be filled," and Plaintiff would work that shift. (*Id.* ¶ 9.) Plaintiff "was never told that he had to take the initiative himself and apply for the shifts that were being assigned to him . . . or call in himself at any particular time without being first . . . called by someone at the company." (*Id.* ¶ 10.)

On or about September 3, 2011, Plaintiff "was injured in a car crash on his way to a shift, and called in sick." (*Id.* ¶ 11.) Plaintiff never received a subsequent call to come in for work. (*Id.* ¶ 12.) Plaintiff, however, had not intended to resign, had never communicated to DG3 that he had resigned, and was never told by DG3 or the Union that he was terminated. (*Id.*) Accordingly, Plaintiff alleges that DG3 breached the employment agreement by depriving him of severance pay and a fair opportunity to challenge the termination ("Count One"). (*Id.* ¶¶ 14-17.)

The Union was the collective bargaining representative for Plaintiff and, under the collective bargaining agreement ("CBA"), had a duty to represent Plaintiff's interests. (*Id.* ¶¶ 19-21.) More than five years after the car accident, on October 20, 2016, Plaintiff's counsel sent correspondence to the Union inquiring whether the Union "would pursue a grievance against DG3

---

[1] For the purposes of this section, the Court takes the facts pled in Plaintiff's Complaint as true. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

2

because of [DG3's] failure to pay full severance pay." (*Id.* ¶ 23.) By correspondence dated December 15, 2016, the Union replied that it would not pursue a grievance on Plaintiff's behalf. (*Id.* ¶ 24.) Accordingly, Plaintiff brings a claim for breach of the duty of fair representation ("DFR") against the Union for "tacitly cooperat[ing] with DG3 in failing to notify Plaintiff . . . when his 'on-call' position at DG3 was terminated, and [for] fail[ing] to pursue a grievance against DG3" on Plaintiff's behalf ("Count Two"). (*Id.* ¶ 25.)

### B. Plaintiff's May 27, 2015 Action[2]

On May 27, 2015, Plaintiff filed a one-count breach of contract action against DG3 (the "Initial Complaint"). (Tykulsker Decl., Ex. A, ECF No. 14-3.) In the Initial Complaint, Plaintiff alleged that "[o]n or about September 3, 2011, . . . DG3 . . . discharged Plaintiff without good cause and despite his continued satisfactory performance." (Initial Compl. ¶ 5.) Plaintiff further alleged that DG3 breached the employment agreement because Plaintiff was "entitled to severance pay from [DG3]," and that Plaintiff had been terminated "three years" earlier. (*Id.* ¶¶ 6-8.) On December 16, 2015, Plaintiff voluntarily dismissed the Initial Complaint. (Tykulsker Decl., Ex. B, ECF No. 14-4.) Plaintiff subsequently attempted to reinstate the Initial Complaint, but his request was denied by the court on October 14, 2016. (Tykulsker Decl., Exs. C, D, ECF Nos. 14-5, 14-6.)

## II. <u>Legal Standard</u>

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[2] *See Premier Pork L.L.C. v. Westin, Inc.*, No. 07-1661, 2008 WL 724352, at *2 (D.N.J. Mar. 17, 2008) (stating that courts may consider matters of public record when deciding a motion to dismiss).

3

544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). In addressing a motion to dismiss under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). While a complaint does not need to contain detailed factual allegations to withstand a Rule 12(b)(6) motion to dismiss, a pleader must "provide the 'grounds' of his 'entitle[ment] to relief[,]' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also* Fed. R. Civ. P. 8(a)(2).

### III. <u>Discussion</u>

Claims arising under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("Section 301"), are subject to a six month statute of limitations. *See United Gov't Sec. Officers of Am. v. CCA of Tenn. LLC*, No. 15-5745, 2016 WL 3392258, at *4 (D.N.J. June 13, 2016). Section 301's six month statutory period governs both Counts of Plaintiff's Complaint. *See Calvo v. Alers*, No. 16-2783, 2017 WL 385037, at *4 (D.N.J. Jan. 26, 2017) ("The Supreme Court has applied the six-month statute of limitations . . . to suits asserting both a claim for breach of a CBA against the employer and a DFR claim against the union for allegedly mishandling ensuing proceedings." (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155 (1983))).

"The six-month statute of limitations begins to run 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Scott v. Cont'l Airlines, Inc.*, No. 13-3008, 2014 WL 345273, at *3 (D.N.J. Jan. 30, 2014) (quoting *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 260 (3d Cir. 1990)). Here, Plaintiff argues that Defendants should be estopped from raising a statute of limitations defense because,

due to Defendants' inaction, Plaintiff "could not have known when his claim accrued and when he needed to take legal action." (Pl.'s Opp'n Br. 6-7, 11-13, ECF No. 19.) According to Plaintiff, the statutory period did not begin to run until the Union responded on December 15, 2016, to Plaintiff's October 20, 2016 correspondence. (*Id.* at 8-13.) Although Plaintiff cites to cases that focused on the moment at which the union notified the plaintiff that it would no longer pursue a grievance on the plaintiff's behalf, the courts in those cases acknowledged that the central inquiry "concerned . . . [the] plaintiff's knowledge of the facts allegedly entitling him to relief." *Balsavage v. Ryder Truck Rental, Inc.*, 712 F. Supp. 461, 469 (D.N.J. 1989); *Bruch v. United Steelworkers of Am., AFL-CIO*, 583 F. Supp. 668, 670-71 (E.D. Pa. 1984) ("This reflects the general rule that the limitations period begins '. . . when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged [violation]." (alterations in original) (citation omitted)); (Pl.'s Opp'n Br. 8-13 (relying on *Balsavage* and *Bruch*).)

Upon reviewing Plaintiff's Complaint and the public records provided by Defendants, the Court finds that Plaintiff's claims are time-barred. At the latest, Plaintiff either already discovered or, in the exercise of reasonable diligence, should have discovered the facts underlying his claims on May 27, 2015 when he filed the Initial Complaint. The Initial Complaint explicitly set forth the same allegations underlying the instant action, demonstrating that Plaintiff was already aware of Defendants' purported violation. Additionally, although the Initial Complaint did not bring a DFR claim against the Union, Plaintiff was aware that he had been terminated, that he had not received severance pay, and that the Union had never communicated that it was pursuing his grievance.[3] Plaintiff filed the instant action more than six months after May 27, 2015, and,

---

[3] Plaintiff pleads that he did not contact the Union to inquire about his grievance until October 20, 2016, more than five years after his last call to work. (Compl. ¶ 23.) Moreover, the Complaint

5

therefore, Plaintiff's claims are time-barred. As Plaintiff's claims are time-barred and because the statutory period cannot be further tolled due to facts reflected in the public records submitted by Defendants, the Court finds that amendment would be futile. Accordingly, Plaintiff's claims are dismissed with prejudice.

IV. **Conclusion**

For the reasons set forth above, it is hereby ordered that Defendants' Motions to Dismiss are GRANTED. An order consistent with this Memorandum Opinion will be entered.

/s/ Michael A. Shipp

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: September 5th, 2017

---

does not plead that the Union ever indicated that it was pursuing his grievance prior to October 20, 2016. (*See generally id.*)