NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PETER MIRABELLA,

    Plaintiff,

v.

DIVERSIFIED GLOBAL GRAPHICS
GROUP, et al.,

    Defendants.

Civil Action No. 17-2030 (MAS) (TJB)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon a Motion for Sanctions filed by Defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union and United Steel Workers, Local 318 (collectively, the "Union"). (ECF No. 26.) Plaintiff Peter Mirabella ("Plaintiff") filed opposition (ECF No. 33), and the Union replied (ECF No. 34). The Court has carefully considered the parties' submissions and decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Union's Motion is denied.

**I.    Background**

On February 3, 2017, Plaintiff filed a two-count Complaint against the Union and Plaintiff's former employer, Diversified Global Graphics Group ("DG3"). (Compl., ECF No. 5.)[1]

---

[1] The Complaint is also located as Exhibit A to the Notice of Removal at ECF No. 1-1; however, Defendants later amended Exhibit A to the Notice of Removal, to include exhibits that were missing from ECF No. 1-1. (ECF No. 5.)

Relevant here is Plaintiff's allegation that the Union breached its duty of fair representation. By way of background, Plaintiff was employed at DG3 and a member of the Union. (*Id.* ¶ 1.) The collective bargaining agreement ("CBA") entitled Plaintiff to severance pay if his employment was terminated. (*Id.* ¶¶ 2-3.) In September 2011, Plaintiff's employment status was changed from "full-time" to "on-call." (*Id.* ¶ 5.) On September 3, 2011, Plaintiff was in a car accident on his way to work and called in sick. (*Id.* ¶ 11.) Plaintiff never received a subsequent call to come in for work (*id.* ¶ 12) and never received severance pay (*id.* ¶¶ 15-17). Plaintiff alleged that he had not intended to resign, had never communicated to DG3 that he had resigned, and was never told by DG3 or the Union that he was terminated. (*Id.*)

On May 27, 2015, almost four years after the last day Plaintiff worked, Plaintiff filed, through counsel,[2] a breach of contract action against DG3 in Superior Court of New Jersey (the "Initial Complaint"). (Tykulsker Decl., Ex. A, ECF No. 14-3.) The Initial Complaint alleged that DG3 "discharged" Plaintiff on September 3, 2011 (Compl. ¶ 5) and did not pay him his severance (*id.* ¶¶ 6-8). The Initial Complaint was filed against DG3 only and the Union was not notified of the lawsuit. (Union's Moving Br. 1, ECF No. 26-1.) In response to the Initial Complaint, DG3 asserted that Plaintiff's claim was governed by the CBA. (Pl.'s Opp'n Br. 4, ECF No. 33.) Plaintiff's counsel subsequently filed a stipulation of dismissal without prejudice on December 16, 2015 and "attempted to utilize [the grievance] procedure." (*Id.*) Plaintiff presented the claim to the American Arbitration Association ("AAA") for arbitration—the final stage of the grievance procedure under the CBA. (Compl. ¶ 4; Pl.'s Opp'n Br. 4.) The AAA, however, informed Plaintiff

---

[2] Plaintiff's counsel points out that the attorney that signed the Initial Complaint, Randall Tranger, was not the same attorney that signed the current complaint, M. Anthony Barsimanto. (Pl.'s Opp'n Br. 12 n.1.) The Court notes, however, that the Initial Complaint appears to have been signed by a named partner at Plaintiff's counsel's firm, Mallon & Tranger. (*Id.*)

on March 21, 2016 that he had no standing to pursue the arbitration, which must be initiated by the Union. (Pl.'s Opp'n Br. Ex. D, ECF No. 33-1.)

On May 19, 2016, Plaintiff's counsel sent correspondence to counsel for DG3 requesting a copy of a document referred to in DG3's November 15, 2015 response to Plaintiff's Initial Complaint. (Pl.'s Opp'n Br. Ex. C at 7,[3] ECF No. 33-1.) In the November 15, 2015 response, counsel for DG3 apparently represented that when "Mr. Mirabella failed to return to work after being recalled in September 2011 . . . DG3 immediately notified him in writing that his failure to return constituted job abandonment." (*Id.*) A copy of this written notification, however, was not provided to Plaintiff. (*Id.*; Pl.'s Opp'n Br. 5.)

On July 27, 2016, Plaintiff attempted to reinstate the Initial Complaint (Compl. Ex. A at 5-6, ECF No. 33-1), but his request was denied by the Superior Court on October 14, 2016 (Tykulsker Decl., Ex. D, ECF No. 14-6), apparently on the grounds that Plaintiff needed to contact the Union before proceeding in court. (Pl.'s Opp'n Br. Ex. F at 14.)

On October 20, 2016,[4] Plaintiff's counsel sent correspondence to the Union indicating that Plaintiff did not believe that the matter was subject to the grievance procedure, but to the extent the Union believed it was, Plaintiff requested that the Union pursue a claim on his behalf. (Compl. ¶ 23; Pl.'s Opp'n Br. Ex. F at 14.) This correspondence, sent over five years after Plaintiff's last day of work, was Plaintiff's first notification to the Union of this issue. (Union's Moving Br. 2.)

---

[3] Where multiple exhibits are included under one ECF number, the Court cites to the page numbers generated by the ECF system for ease of reference.

[4] Counsel originally attempted to send this correspondence on August 8, 2016, however, it was returned as unclaimed and undeliverable. (Pl.'s Opp'n 4.) Plaintiff then re-sent the correspondence to the proper address on October 20, 2016. (Pl.'s Opp'n Br., Ex. F at 14.) The October 20, 2016 correspondence enclosed the August 6, 2016 letter and also informed the Union of the Superior Court Judge's refusal to reinstate the lawsuit until Plaintiff "reach[ed] out to [the Union]." (*Id.*)

3

On December 15, 2016, the Union responded that it would not pursue a grievance on Plaintiff's behalf, as the CBA requires that any grievance be brought within twenty-five days of the incident and Plaintiff's last day worked was several years prior. (Compl. ¶ 24; Pl.'s Opp'n Br. Ex. G at 16-17.) The Union's correspondence provided that "any claim that Mr. Mirabella may have had for severance benefits under the CBA accrued in September of 2011, when his employment was severed. Given this, the Union is unable to file a grievance on behalf of Mr. Mirabella . . . ." (*Id.*; Union's Moving Br. 2.)

On February 3, 2017, Plaintiff initiated this lawsuit, asserting the original claim against DG3 and a claim for breach of the duty of fair representation against the Union for failing to pursue the grievance on Plaintiff's behalf. (Compl. ¶ 25.) On March 13, 2017, the Union's Assistant General Counsel notified Plaintiff's counsel that the Union believed the Complaint was clearly time-barred by the six-month statute of limitations and Plaintiff's allegations did not support a claim for breach of the duty of fair representation against the Union. (Tykulsker Decl. in Supp. of Mot. for Sanctions, Ex. C at 11-13, ECF No. 26-2.) The Union requested that Plaintiff dismiss the Union from the lawsuit. (*Id.*) Plaintiff did not dismiss the Union.

On April 6, 2017, the Union filed a motion to dismiss.[5] (ECF No. 14.) The Union argued that Plaintiff's lawsuit was clearly time-barred as it was not filed within the six-month limitations period that governs a claim for breach of the duty of fair reprsentation. (Union's Moving Br. Mot. to Dismiss, ECF No. 14.) The Union emphasized the clearly established six-month statute of limitations and argued that the Union's obligation to bring a grievance on Plaintiff's behalf would have accrued, at the latest, in October 2011 pursuant to the terms of the CBA. (*Id.* at 3-9.) The Union argued that, even if Plaintiff was entitled to tolling of his claim, once he filed the Initial

---

[5] DG3 also moved to dismiss on April 18, 2017. (ECF No. 16.)

Complaint, the statute of limitations could no longer be tolled. (Union's Reply Mot. to Dismiss 2-4, ECF No. 23.) As Plaintiff still did not file a claim against the Union for another two years, the claim was clearly time-barred. (*Id.*) Plaintiff opposed the motion, arguing, among other things, that the claim was timely because it was commenced within six months of the Union's notification to Plaintiff in December 2016 that it would not pursue the grievance on Plaintiff's behalf. (Pl.'s Opp'n to Mot. to Dismiss 8-10, ECF No. 19.)

At some point thereafter, the Union served Plaintiff with an advanced copy of its Motion for Sanctions, which it filed with the Court on August 7, 2017, after the twenty-one-day notice period pursuant to Rule 11(c)(2) expired. (Union's Moving Br. 3, ECF No. 26.)

On September 5, 2017, the Court issued a Memorandum Opinion (ECF No. 30) and Order (ECF No. 31) dismissing Plaintiff's Complaint with prejudice, finding the Complaint was time-barred. The Court found that, at the latest, Plaintiff was on notice of the claim when he filed the Initial Complaint, and any amendment would be futile as the statutory period could not be further tolled. (Sept. 5, 2017 Mem. Op. ("Prior Op.") 5-6, ECF No. 30.) On the same day the decision was issued, Plaintiff opposed the Union's request for sanctions. (ECF No. 33.)[6]

The Court now addresses the Union's request for Rule 11 sanctions against Plaintiff's counsel. The Union seeks a finding that Plaintiff's Counsel violated Federal Rule of Civil Procedure 11(b)(2) by filing a claim well past the statute of limitations, and even though "it is [] clear that Plaintiff does not actually believe the Union is the party who wronged him." (Union's Moving Br. 4.) The Union asks the Court to find M. Anthony Barsimanto, the attorney who signed

---

[6] Although the opposition to the motion for sanctions appears on the docket after the Court's decision on the Motions to Dismiss, the opposition was filed on the same day and references the "still-pending motion to dismiss." (Pl.'s Opp'n Br. 6.)

the Complaint, and his firm, Mallon & Tranger, Esqs., jointly and severably liable for the Union's fees.[7] (*Id.* at 4, 16.)

## II. Discussion

Federal Rule of Civil Procedure 11(b)(2) provides that:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> * * *
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed. R. Civ. P. 11(b)(2). The rule further provides that if "the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c).

The test for whether a Rule 11 motion should be granted is objective reasonableness under the circumstances. *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 551 (1991).[8] The Third Circuit defines reasonableness as "'objective knowledge or belief at the time of the filing of the challenged paper' that the claim was well-grounded in law and fact." *Magerman v. Mercer*, No. 17-3490, 2018 WL 684806, at *3 (E.D. Pa. Feb. 2, 2018) (quoting *Ford Motor Co.*

---

[7] The Court notes that Plaintiff filed a substitution of attorney on November 27, 2017, withdrawing M. Anthony Barsimanto, Esq. and substituting Thomas M. Mallon, Esq. (ECF No. 35.) The firm representing Plaintiff has not changed.

[8] *See also Ario v. Underwriting Members of Syndicate 53 at Lloyds*, 618 F.3d 277, 297 (3d Cir. 2010), *as amended* (Dec. 7, 2010); *Martin v. Brown*, 63 F.3d 1252, 1264 (3d Cir. 1995); *Shenango Inc. v. Massey Coal Sales Co.*, No 08-199, 2009 WL 2901296, at *6 (D.N.J. Sept. 10, 2009); *Goodman v. Goodman*, 2007 U.S. Dist. Lexis 16010, at *2 (D.N.J. Mar. 6, 2007).

*v. Summit Motor Prod., Inc.*, 930 F.2d 277, 289 (3d Cir. 1991)). "An attorney can be sanctioned for both bad faith, negligence, and 'to some extent, by professional incompetence.'" *Shenango*, 2009 WL 2901296, at *6 (citing *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987)). The Third Circuit has analogized an attorney's obligation with respect to filing a complaint to a "railroad crossing sign, 'Stop, Look and Listen.' It may be rephrased, 'Stop, Think, Investigate and Research' before filing papers either to initiate a suit or to conduct the litigation." *Gaiardo*, 835 F.2d at 482.

The Third Circuit has also warned that "the target is abuse -- the Rule must not be used as an automatic penalty against an attorney or a party advocating the losing side of a dispute." *Id.* "Substantially more" than an adverse judgment or ruling is required to obtain Rule 11 sanctions. *Id.* at 483. Rule 11 is intended to impose sanctions "only in the 'exceptional circumstance,' where a claim or motion is patently unmeritorious or frivolous." *Doering v. Union Cty. Bd. of Chosen Freeholders*, 857 F.2d 191 (3d Cir. 1988) (internal citation omitted); *see also Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1314 (3d Cir. 1994); *Magerman*, 2018 WL 684806, at *3. "And even where such exceptional circumstances exist, the court is merely authorized, not required, to impose sanctions." *Gonzalez v. Busy Place Early Learning Ctr.*, No. 14-6349, 2015 WL 5679887, at *5 (D.N.J. Sept. 25, 2015) (citing *Bensalem Twp.*, 38 F.3d at 1314). Importantly, "the rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." *Gaiardo*, 835 F.2d at 483. "The Rule seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law." *Id.* at 483-84. The creativity, however, "must be in service of a good faith application of the law or at least a good faith request for a change in the law." *Id.* at 484.

The Third Circuit, in *Pensiero v. Lingle*, 847 F.2d 90 (3d Cir. 1988), set forth considerations for determining whether an attorney made a reasonable inquiry prior to filing a complaint: (1) the amount of time available to conduct a factual and legal investigation; (2) the necessity for reliance on a client for the underlying factual information; (3) the plausibility of the legal position advocated; (4) whether the case was referred to the signer by another member of the Bar; and (5) the complexity of the legal and factual issues implicated. *Id.* at 95 (citing Fed. R. Civ. P. 11 Advisory Committee note and *Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 875 (5th Cir. 1988) (en banc)). The Union urges the Court to find that each of these factors supports a finding of sanctions—arguing that: (i) Plaintiff waited two years between filing the Initial Compliant and the instant lawsuit; (ii) counsel had access to the CBA through Plaintiff and did not need to rely on Plaintiff for facts; (iii) the limitations period is clearly established and Plaintiff's tolling arguments fail; (iv) there is no evidence that this case was referred to counsel; and (v) there is nothing complex about determining the statute of limitations period. (Union's Moving Br. 8-10.)

After careful review of the filings, the Court is not persuaded that this matter was so frivolous as to warrant sanctions. Plaintiff's filing of this Complaint was not the type of egregious behavior often present in the context of Rule 11 sanctions. *See, e.g., Balthazar v. Atl. City Med. Ctr.*, 137 F. App'x 482, 490 (3d Cir. 2005) (sanctions warranted where proposed amended complaint was almost identical to claims previously rejected by state court and previously dismissed by the District Court). In this case, although the Union takes the position that the claim against it was clearly out of time, and the Court ultimately agreed, the Court cannot say that Plaintiff had no good faith basis to assert that the statute of limitations against the Union ran from the date that the Union informed Plaintiff that it would not pursue a grievance on its behalf. *See e.g., Magerman*, 2018 WL 684806, at *3 (finding that plaintiff had not "engaged in the egregious

8

behavior often exhibited when sanctions are imposed for the mere filing of a complaint" by filing a lawsuit despite a clear agreement to arbitrate, where defendants speculated that plaintiff filed the lawsuit for media attention and to harass defendant.).

Although the Court declines to find that Plaintiff's counsel's initiation of this lawsuit violated Rule 11, the Court cautions Plaintiff's counsel that the Court came to this decision after significant deliberation. The Court finds that the filing bordered on frivolous in light of the relevant case law and the circumstances of the litigation. Here, the Union advanced persuasive arguments that gave the Court pause in considering whether sanctions were appropriate. While the Court's decision ultimately reflects the policy consideration that Rule 11 sanctions should not "chill" an attorney from making a creative argument, Plaintiff's argument bordered on "precisely the sort of 'creativity' Rule 11 should chill." *Pawlowske v. Chrysler Corp.*, 623 F. Supp. 569, 573 (N.D. Ill. 1985) (granting motion for sanctions where the court found that plaintiff's "creativity" was not a good faith application of the law or request for a change in the law.)

The Court, therefore, denies the Union's motion for sanctions, but cautions counsel to carefully research and consider future filings.

### III. Conclusion

For the reasons set forth above, it is hereby ordered that the Union's Motion for Sanctions is denied. An order consistent with this Memorandum Opinion will be entered.

_____
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: April 27th, 2018